McFarland, J.,
delivered the opinion of the court.
This is an. action of trover brought by Trenholm ■& Son, of Charleston, S. C., against the Merchants’ National Bank of Memphis, for the conversion of fifty bales of bagging.
A jury was waived, and the case submitted to the Judge below, upon the proof. He gave judgment for the plaintiff, for |5,000. The bank has appealed in error.
There is no controversy about the facts.
In the latter part of the year 1869, Trenholm & Son consigned the goods to Trout & Son, factors and commission merchants of Memphis, for sale upon com *522 mission. They were duly received and stored with Dow, a warehouseman. The market price fluctuated from that time, and a long correspondence was kept up between the parties, in relation to the sale and other matters. The result was that the goods were not sold, because, as Trout & Son say, the price fixed by the consignors could not be obtained.
About the 27th of July, 1870, Trout & Son procured the Merchants’ National Bank of Memphis to discount their note for $4,500, and pledged the goods in question, by delivering to the bank the warehouseman’s receipt, to secure the note. The bank notified the warehouseman that they held the receipt, and from that time he held the goods for them.
The note of Trout & Son was not paid, but was renewed, and in April, 1871, the goods were sold, six bales being sold by the warehouseman, who says that he considered the proceeds, less the amount due him for storage, as belonging to the bank: the other forty-four bales were sold by the bank, by the direction of Trout & Son, and the proceeds applied to their note.
The bank was ignorant of the character in which Trout & Son held the goods.
Trenholm & Son were ignorant of the misappropriation of the goods, until about the time they were sold.
Trout & Son had never made any advances on the goods, and, on the — day of March, 1871, they forwarded to Trenholm & Son their account, of $927, for charges, etc., -which was promptly paid.
Upon these facts, is the action maintainable?
*523 In American Leading Cases, vol. 1, marg. p. 676, upon a review of the cases, it is laid down as the-settled doctrine, that a factor cannot ’ pledge the goods of his principal, and that if he pledge for his own debt, it is a conversion, and trover will lie against him; and that if the pledgee sell, or refuse to deliver on demand, trover will lie against him; for the pledge is wholly void, and the property is not divested out of the owner.
To the same purport is the case of Campbell v. Reeves, 2 Head, 226, where the consignees had transferred the goods to their successors in business, without the knowledge of the consignors.
This was held a conversion upon the part of the factors, and of course the parties who took from them,, were likewise guilty.
It is argued, that as Trout & Son were empowered to sell, and the bank sold by their direction, and paid the proceeds on their debt, it was the same-thing as if Trout & Son had sold, and received the-money.
But, in the case referred to, Judge McKinney said that while a factor has a special property in the goods consigned to him for sale, and a lien for fac-torage and commission, and may sell the goods in his-own name; yet, in general, he has no power to delegate his authority to another person; and if he dispose of the goods by delegation of his authority to a third person, it is a conversion.
We think that, upon the authorities referred to, the party taking the goods is likewise guilty of a conversion..
*524 We have examined the opinion in the case of Roach v. Turk, decided at the April term of this court, but we think it is not in conflict with this opinion.
We do not see that the delay in the sale of the goods, authorised by Trenholm &• Son, can prejudice their rights. There was nothing affecting the rights of the bank in this. It was an authority belonging to the ownership of the property.
It is next argued, that no action for a conversion could be maintained without a demand being made.
The property having been sold by the bank before the action, no demand was necessary.
The authorities, we think, will show that a demand of possession, and a refusal, as evidence of a conversion, are required only in those cases where the possession was rightfully acquired; and not where the act of taking possession was itself a conversion. Garvin v. Luttrell, 10 Hum., 16; Scruggs v. Davis, 5 Sneed, 261; Arendale v. Morgan, Ib., 703.
Assuming control of the property inconsistently with the rights of the owner, under our authorities, is itself a conversion; so that a conversion took place here when the bank assumed control of the goods, in July, 1870.
It is argued, that at the time of the pledge, Tren-holm & Son owed Trout & Son for charges, etc., and that, to this extent, they had a right to pledge the -goods, and to the same extent the bank had rightful possession of them; and that the amount of these charges should he deducted.
*525 But Trout & Son had not the right to pledge the goods for these charges -without first having demanded the charges from the plaintiff.
The proof shows that these charges were promptly-paid to Trout & Son on demand.
The proof shows that the value of the goods at the time of the conversion was $100 per bale, or $5000; and that this continued to be their value until the fall of 1870; but that at the time they were actually sold the price had declined, so that the bank did not realize so much.
The plaintiffs had the right to the value of the goods at the date of the conversion; or, according to same authorities, the highest value at any time between the date of their conversion and the end of the trial. Romaine v. Van Allen, 26 17. Y., 309.
The plaintiffs having peremptorily ordered Trout & Son to sell on the — day of October, 1870, the Judge fixed the damages at the value on that day, which was the same it had been ever since the conversion, in July, until then.
This we think was not error.
The judgment is affirmed.